THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOSHUA DOSS, individually and on**                                                 **PLAINTIFF**
**behalf of all others similarly situated**

**v.**                            **Case No. 4:19-cv-00296-KGB**

**CUSTOM AUTO SERVICE**
**INC. and KEVIN STRAYHORN**                                                     **DEFENDANTS**

**OPINION AND ORDER**

Before the Court is the motion for summary judgment of defendants Custom Auto Service, Inc. ("CAS") and Kevin Strayhorn (jointly "defendants") (Dkt. No. 24). Plaintiff Joshua Doss has responded to the motion for summary judgment (Dkt. No. 31). Defendants have replied to the response (Dkt. No. 33).

**I.**      **Statement Of Facts**

Unless otherwise stated, the facts are drawn from the defendants' statement of fact and Mr. Doss's response to defendants' statement of fact (Dkt. Nos. 26; 32).

CAS is a locally-owned and operated auto body repair shop in Little Rock, Arkansas (Dkt. No. 32, ¶ 1). CAS has operated at the same location in Little Rock, Arkansas, since 1980 (*Id*.). CAS provides various auto repair services including general auto body repair, paintless dent repair, mechanical repair, auto glass repair, refinishing, and related services (*Id*.). CAS's operations are divided between a body shop and a paint shop (*Id*.).

CAS also provides convenience services to its customers, such as a free pick-up and drop-off for customers who need transportation to and from its shop and their homes or worksites while their vehicles are being serviced. CAS does not operate any tow trucks nor does it provide any towing services (*Id*., ¶ 2). CAS advertises services to the general public through its website

available at https://customautoinc.com (*Id.*, ¶ 3).  CAS does not provide in-house financing, but it does accept payment from customers' auto insurance providers (*Id.*, ¶ 6).  CAS services both individual and commercial customers such as local auto dealerships (*Id.*, ¶ 7).  CAS has no public contracts and does not provide services on behalf of any governmental agency (*Id.*, ¶ 8).  Repair jobs are performed on individual vehicles and billed to each customer's account for all services provided (*Id.*, ¶ 9).

CAS does not engage in any manufacturing of goods (*Id.*, ¶ 10).  CAS does not pay any employees by a piece-rate compensation system (*Id.*).

Job positions vary at CAS (*Id.*, ¶ 11).  These varying duties involve estimating auto repair work and costs, administration, painting, prepping, body repair, detailing, and more auto body repair work (*Id.*).  Work demands vary entirely upon customer needs (*Id.*).  In some weeks, CAS has numerous repair jobs going on at the same time with others waiting to be completed, and other weeks work slows to only a few customer jobs (*Id.*, ¶ 12).  As such, painters' and other technicians' hours fluctuate due to business needs (*Id.*).

Mr. Doss was employed by CAS as a painter/prepper in the paint shop throughout his employment (*Id.*, ¶ 13).  His job duties included preparing automobiles to be painted, painting those automobiles, and finishing/detailing (*Id.*).  Mr. Doss and other repair workers cleaned the shop during slow periods, and some of this time was reported at "flag hours" (*Id.*, ¶ 14).

For its billing system, *i.e.* operational revenue, CAS provides its customers with estimates for hours of labor and the amount of goods it expects will be necessary to complete the auto repair work needed for the customers' vehicle, which are also referred to as "flag hours." (*Id.*, ¶ 15).  Customers approve the estimate and the flag hours billed to the customers after the work is completed, whether any additional or less work is required during the repair work (*Id.*).  Flag hours

are pre-determined based on the estimated amount of labor needed, products used, and other costs (*e.g.*, hazardous waste removal, battery and tire recycling fees, etc.) in order to repair the vehicle (*Id.*). To assist in accurate estimating, CAS subscribes to an online estimating program called "CCC Motors" via a monthly fee (*Id.*, ¶ 16). CCC Motors specializes in auto collision repair estimates, and CAS uses it for pricing the "flag hours" billed to its customers (*Id.*). Each "flag hour" varies in costs, labor, and other factors, depending upon the scope of the work, vehicle type, and other factors utilized in CCC Motors' estimation software program, such as insurance billing guidelines common in the industry (*Id.*).

Throughout his employment with CAS, Mr. Doss and CAS had an agreement that Mr. Doss would be paid a commission of 40% of the amount billed to the customer (*Id.*, ¶ 19). Regardless of the time Mr. Doss spent on each vehicle to complete a job, he was paid a percentage for the number of flag hours allotted to his work on a particular vehicle (*Id.*, ¶ 20). This work was sometimes split among a team of other painters who all worked together on the same projects for efficiency (*Id.*). The more efficiently Mr. Doss and his co-workers finished a customer's repair job, the more they would earn for the hours actually spent working on the job and the more jobs they could bill hours thereby increasing their compensation (*Id.*, ¶ 21).

In all cases, CAS accounted for billed hours, and Mr. Doss received only commissions based on billed hours rather than hours worked (*Id.*, ¶ 22). Mr. Doss had no guaranteed salary or hourly pay rate (*Id.*). The reports attached as Exhibit 4 to defendants' motion for summary judgment show all of the billed hours submitted by Mr. Doss and his commissions earned from all such billings (*Id.*; Dkt. No. 24-9). The reports also document any flag hour draw payments from projects that carried over from one week to another as discussed above (Dkt. No. 32, ¶ 22).

Like other painters, Mr. Doss was compensated entirely by commissions, with no hourly rate or any straight-time base pay provided by CAS (*Id.*, ¶ 23). Mr. Doss was paid a commission rate based upon his experience and skills, which Mr. Strayhorn explained to him in detail at the time of his hire (and several times thereafter) (*Id.*, ¶ 24). Mr. Doss was provided multiple opportunities to take on more work, but he declined, so the work was performed by other employees at CAS (*Id.*, ¶ 26).

Mr. Doss asserts that during particularly slow periods, he and other workers cleaned the shop or performed other tasks that they recorded as flag hours, but CAS required he and other workers to be on site during normal business hours, regardless of whether they were performing repair work or had enough down time to record flag hours cleaning the shop (Dkt. No. 32, ¶ 17).

## II. Legal Standard

### A. Legal Standard For Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could render its verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment. *See Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271-72 (8th Cir. 1992); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

First, the burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party satisfies its burden, the burden then shifts to the non-moving party to establish the presence of a genuine issue that must be determined at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[I]n an FLSA exemption case such as this, the employer . . . has the burden of proving the employee fits within one of the FLSA exemptions. *Grage v. N. States Power Co.-Minnesota*, 813 F.3d 1051, 1054 (8th Cir. 2015) (*citing Fife v. Harmon*, 171 F.3d 1173, 1174 (8th Cir.1999)). "[W]hether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Grage*, 813 F.3d at 1054 (citing *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir.1996)).

      B.     **Legal Standard For Fair Labor Standards Act And Arkansas Minimum Wage Act Claims**

Some employees are exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq*. (" AMWA"). "The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985 (W.D. Ark. 2016) (quoting *Carter v.*

5

*Primary Home Care of Hot Springs, Inc.*, Case No. 6:14-cv-6092, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015)).

"[W]hether an employee is exempt under the FLSA is an issue of law." *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).  The Eighth Circuit has held that "[c]ourts should broadly interpret and apply the FLSA to effectuate its goals because it is remedial and humanitarian in purpose." *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011) (internal quotation omitted).  To promote this goal, the Department of Labor ("DOL") has provided regulations that include factors to guide the Court in determining whether an employee qualifies for an exemption.  *See Fife v. Bosley*, 100 F.3d 87, 89 (8th Cir.1996) (citing 29 C.F.R. pt. 541).  The Supreme Court has rejected the principle that the FLSA's exemptions should be construed narrowly and instead determined that they are to be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

### III. Analysis

#### A. Retail Or Service Establishment Exemption

In his complaint, Mr. Doss argues that defendants did not pay him an overtime premium for the hours he worked in excess of 40 hours in a week under the requirements of the FLSA and AMWA (Dkt. No. 1, ¶ 29).  Defendants move for summary judgment on all claims, FLSA and AMWA (Dkt. No. 6, ¶ 1).  In their briefing, the parties do not argue to the Court any differences in interpreting these laws or their exemptions.  Defendants argue that they are entitled to summary judgment because Mr. Doss was properly classified as an exempt employee under the "retail or service establishment" exemption under section 7(i) of the FLSA (Dkt. No. 25, at 8).

"The FLSA requires employers to pay overtime of at least one and one-half times the regular pay rate for employees who work over forty hours in one workweek." *Grage*, 813 F.3d at

1054 (citing 29 U.S.C. § 207(a)(2)). The FLSA's overtime requirements do not apply to employees who fall within one of the exemptions set forth under the FLSA. An employer claiming an exemption from the FLSA's overtime requirements bears the burden of establishing that the exemption applies. *Corning Glass Words v. Brennan*, 417 U.S. 188, 196-97 (1974). The retail or service establishment exemption of the FLSA provides, in relevant part:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).

Mr. Doss does not dispute that more than half of Mr. Doss's compensation for a representative period represents commissions on goods or services (Dkt. No. 31, at 6, n. 2).

In order to establish that CAS is a "retail or service establishment" under 29 U.S.C. §207(i), defendants must prove that their establishment has a retail concept and that at least 75 percent of their annual dollar volume of sales were recognized as retail or service in the auto repair industry and were not for resale. The applicable regulation defines a retail or service establishment as a business that, "(a) Must engage in the making of sales of goods or services; and (b) 75 percent of its sales of goods or services, or of both, must be recognized as retail in the particular industry; and (c) not over 25 percent of its sales of goods or services or of both, may be sales for resale." 29 C.F.R. § 779.313

Defendants acknowledge that CAS provides auto body collision repair services to individuals and some commercial clients. Defendants state that not over 25 percent of its sales are for resale (Dkt. No. 25, at 14). Defendants contend that, even though it provides repairs for

commercial clients, these repairs are ultimately used for their own customers and are still "retail sales" under the section 7(i) exemption.  Defendants point to the United States Court of Appeals for the Seventh Circuit's opinion in *Alvarado v. Corp. Cleaning Services, Inc.,* where the Court concluded that a window-washing company was a retail service establishment in part because it sold window-cleaning services to the ultimate customers rather than reselling window-washing services.  782 F.3d 365, 369-70 (7th Cir. 2015).  Defendants also assert that the commission payments to Mr. Doss are similar to the commission plan in *Pittman v. Mcclain's R.V., Inc.*, where the District Court for the Eastern District of Texas analyzed the "flag rate" system that utilized a "flat rate manual" to estimate the price of an RV repair for a customer from which the service technicians received a commission.  2013 WL 1239092, *8-9 (E.D. Tex. June 12, 2013).

      Mr. Doss argues that, even if defendants' business performs retail sales, they have not met their burden of showing that less than 25% of their sales of service are for resale.  Mr. Doss claims the core of the retail concept is sale of goods or services to private individuals for family and noncommercial use, but the sale of auto repair services to a car dealership that then resells the repaired cars is a sale "made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in the original form, or in an altered form, or as a part, component or ingredient of another article." (Dkt. No. 31, at 4 (quoting 29 C.F.R. § 779.331)).  Mr. Doss points out that the regulation defining a sale of service includes specifically the sale of auto repair services to a car dealership that then resells the repaired cars as an example.  The regulation provides:  "[w]here a garage repairs automobiles for a secondhand automobile dealer with the knowledge or reasonable cause to believe that the automobile on which the work is performed will be sold, the service performed by the garage is a sale for resale." (*Id.*, at 4-5 (citing 29 C.F.R. § 779.334)).

Mr. Doss asserts in his declaration that defendants provide repair services to various car dealerships in the Little Rock area including Owens Murphy Volkswagen, Jaguar, Land Rover, Range Rover, and Everett Infiniti of Central Arkansas (Dkt. No. 31-1). Mr. Doss also states that the dealerships partner with defendants to send any trade-in vehicles requiring repairs to defendants to provide all repair work, and return the vehicle to the dealerships, who resell the vehicles (*Id*.). Mr. Doss argues this is the exact scenario described by the regulation as an example of service for resale. Mr. Doss also contends that when a customer of a dealership brings a vehicle to the dealership for repair, the dealership contracts out the repair to CAS, who during his employment performed the repair on behalf of the dealership (*Id*.). Mr. Doss argues that the dealership pays CAS for the repair and then, in turn, receives payment from the customer (*Id*.). In his declaration, Mr. Doss states that he is unable to state the exact number of dealership cars that come through defendants' repair shop, but he states that he can confidently assert it was over 50% percent during his employment (*Id*., ¶ 6). Mr. Doss contends that defendants have not shown that no reasonable jury could find that they are not a service establishment and so defendants have not met their burden on summary judgment.

The Court determines that, based on the record before it, there are disputed facts that preclude summary judgment. Defendants have the burden of proving their entitlement to the exemption at the summary judgment stage, and defendants have failed to meet their burden on the current record before the Court. For example, it is unclear on the record before the Court how much of CAS's sales are derived from business with dealerships for repairs on secondhand automobiles that are then resold by the dealerships. Accordingly, the Court denies defendants' motion for summary judgment.

### B. Mr. Doss's Classification As An Exempt Employee

Defendants assert that Mr. Doss's regular rate of pay exceeded one and a half times the federal minimum wage rate as required by 29 U.S.C. § 207(i). *See also* 29 C.F.R. § 779.412. Defendants contend that, to calculate the regular rate of pay for a particular workweek, you take the hours worked divided into straight-time earnings for such hours to obtain the statutory regular rate. 29 U.S.C. § 207(i); *see also* 29 C.F.R. § 779.419(b) (citation omitted). Defendants argue that here, Mr. Doss "maintained time records for all hours worked and his payroll records recorded all of his renumeration paid (all in the form of commissions) for each workweek. His regular rate exceeded the federal minimum wage rate of $7.25 at all times and averaged more than $24.00 per hour during the relevant time period. Thus, his weekly regular rate is easily computed and evidenced on the records provided." (Dkt. No. 25, at 18).

Mr. Doss counters that, even if defendants met their burden to demonstrate that CAS is a service establishment, defendants cannot establish on the record before the Court that his regular rate was at least one and one-half times the minimum wage because his timesheets are not an accurate reflection of his hours worked (Dkt. No. 31, at 6-7). Mr. Doss submits a declaration stating that CAS was open from 7:30 a.m. to 5:30 p.m. Monday through Friday, and defendants required that he be on site during normal business hours regardless of whether he was working on a paint job or not (Dkt. No. 31-1, ¶ 7). Mr. Doss states that, while he was required to keep track of all of the time he spent working on vehicles on timesheets divided into six-minute increments, this timesheet was not used for payroll purposes (*Id.*, ¶¶ 8-9). Mr. Doss states, "[d]efendants wanted accurate records of the time I spent performing paint jobs but were unconcerned about the accuracy of the time records as a measure of how much time I spent at work." (*Id.*, ¶ 9). Mr. Doss states that he "regularly had a 20- or 30-minute period between jobs when we were either cleaning

up from the previous job or prepping the area for the next job. This work was necessary to performing our jobs, but we did not record this time because we were not performing a repair job that could be billed to the customer, nor were we doing 'flag hours' work for Defendants. We performed this work between every paint or repair job we performed." (Dkt. No. 31-1, ¶ 11).

Mr. Doss's claim that he worked from 7:30 a.m. to 5:30 p.m. five days per week every week of his employment and his assertion that during at least ten weeks of his employment his regular rate of pay was less than one and one-half times the Arkansas minimum wage at the time creates a fact issue that precludes granting summary judgment.

### IV.     Conclusion

For these reasons, the Court denies defendants' motion for summary judgment (Dkt. No. 24).

It is so ordered this 16th day of February, 2022.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge